**IN THE UNITED STATES DISTRICT COURT**
**IN THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NICHOLE EHRHEART, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-350 |
| | ) | |
| BOSE CORPORATION, | ) | Judge Lancaster |
| | ) | Magistrate Judge Hay |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

This case arises under the primary provision of the Fair and Accurate Credit Transaction

Act of 2003 ("FACTA" or "the Act") (codified at 15 U.S.C. § 1681c(g) of the Fair Credit Reporting

Act ("FCRA")).   That section reads in pertinent part:

> No person that accepts credit cards or debit cards for
> the transaction of business shall print more than the
> last five digits of the card number or the expiration
> date upon any receipt provided to the cardholder at
> the point of sale or transaction.

This provision , which  applies only to electronically printed receipts, became effective in two

phases, depending on when the retailer's cash register was installed: "[W]ith respect to cash

registers installed on or after January 1, 2005, compliance was required immediately, while registers

in use before that date were required to comply beginning on December 4, 2006."  Arcilla v. Adidas

Promotional Retail Operations, Inc., 488 F. Supp.2d 965, 969 (C.D. Cal. 2007) (citing 15 U.S.C. §

1681c(g)(3)).

The Plaintiff, Nichole Ehrheart ("Ehrheart"), purporting to act on behalf of herself and

others similarly situated,  alleges that the Defendant, Bose Corporation ("Bose"), violated the terms

of FACTA when, during the course of processing her telephone order for merchandise to be shipped to her home, it included with her shipment a nonconforming receipt. Bose filed the pending Motion for Summary Judgment arguing that Ehrheart has failed to adduce evidence sufficient to support a claim under FACTA. The Court disagrees, and respectfully recommends that Bose's Motion for Summary Judgment (Doc. 18) be denied.

## II. <u>REPORT</u>

### A. <u>BACKGROUND</u>

The parties agree that the facts underlying this matter are straightforward and undisputed. The Preamble to FACTA explains that the legislation was enacted "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes." Pub. L. No. 108-159. To these ends, FACTA amended the FCRA to include a requirement that credit and debit card account numbers be truncated on printed receipts to show a maximum of five card digits, and to eliminate the card's expiration date from the receipt.

On December 11, 2006, about one week after the second phase of FACTA went into effect, Ehrheart telephoned the Bose Factory Store in Grove City, Pennsylvania, to purchase a set of headphones. She spoke with Bose employee, Christopher Smith ("Smith"), asking to pay for the headphones with a credit card over the phone. Ehrheart provided Smith with a shipping address in Erie, Pennsylvania. Smith then took the Plaintiff's full credit card number, including the expiration date, and recorded it by hand on an order form. This form also included the Plaintiff's billing and shipping addresses, and information identifying the headphones. Smith processed the sale through a cash register in the store, entering the credit card information by hand. A receipt was printed. Although the receipt conformed to the requirements of FACTA in that it showed only the

last five digits of Ehrheart's credit card number, it was nonconforming in that it revealed the card's expiration date. Smith wrote on the signature line of the receipt that the sale had been completed by phone. The printed receipt, with the card's expiration date still visible, was packed in a box with the headphones and shipped to the Plaintiff. The record does not show that the store had a separate register dedicated to phone transactions. Thus, the receipt sent to Ehrheart did not differ in any way from the receipt that she would have received - in fact, it *was* the receipt she would have received - had she bought the headphones inside the Bose store. Ehrheart did not experience identity theft or other harm as result of this transaction.

On March 19, 2007, Ehrheart filed a purported class action complaint, one of several filed against various defendants on behalf of Ehrheart, and one of more than a dozen filed on behalf of others represented by counsel for Ehrheart in the Western District of Pennsylvania. Ehrheart claims that Bose willfully violated FACTA when it printed and provided her with a register receipt disclosing the expiration date of her credit card. She seeks statutory damages, attorneys fees, and costs under the provisions of 15 U.S.C. §§ 1681 *et seq.*, and permanent injunctive relief.

## B. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only where the depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there is no genuine issue as to any material fact. There must be enough evidence with respect to an issue to enable a reasonable jury to find in favor of the non-moving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). Analyzing the record, the court must view the facts in the light most favorable to the Plaintiff and draw all reasonable inferences in her favor. <u>McCarthy v. Recordex Serv., Inc.</u>, 80 F.3d 842, 847 (3d Cir. 1996).

**C. HAS EHRHEART ESTABLISHED EACH ELEMENT OF A FACTA CLAIM?**

**1. Construction of the Term "Point of Sale"- the Parties' Positions**

Bose maintains that because it did not provide a receipt to the Plaintiff "at the point of sale or transaction" it was not required to comply with the truncation requirements of FACTA. According to Bose, the phrase "point of sale" denotes a "precise location within a store." ( Doc. 21 at 6). "Under no theory can a mailing addresss in Erie, Pennsylvania, over seventy miles away from the Grove City store constitute 'the point of sale or transaction' as Congress used that term in FACTA." Id. at 6. Ehrheart, however, contends that the phrase refers not to a place, but "to an event in time, i.e., when payment (or exchange) is being made with a merchant." (Doc. 31 at 1). These divergent readings of the "point of sale" requirement imposed by FACTA require the court to address a question of first impression.

Bose supports its reading of FACTA by arguing first that the Act was directed to the retail industry[1] where the phrase "point of sale" is a term of art designating an area inside a store where a sale occurs, and that the rules of statutory construction mandate that the term be construed with reference to "the art or science involved." RCN Telecom. Servs. v. DeLuca Enter., 413 F. Supp. 464, 470 (E.D. Pa. 2005).[3] Bose contends that Congress *has* consistently defined the "point of sale"

---

[1]Bose draws this conclusion from the fact that Congress invited the Senior Vice President and General Counsel of the National Retail Federation to testify on behalf of the Federation at legislative hearings pertaining to FACTA. See 2003 WL 21541525 (F.D.C.H. July 9, 2003).

[3]Rona Ostrow and Sweetman R. Smith define "point of sale" as follows:
> (1) That section of the store or department where the sale is consummated, i.e., where the customer pays for and receives the merchandise. This is often the location of point of purchase displays and other promotions. Also called "point of purchase." (2) A register-based data collection system used by retailers.

*The Dictionary of Retailing*, 171, Fairchild Publications (1985) (Doc. 20 at 36).

as a specific location. For example, the Food Stamp Act defines "point of sale service" as "any product or service related to the electronic authorization and processing of payments for merchandise at a retail food store." 7 U.S.C. §2016(i)(11)(A)(iv). Bose also notes the Department of Agriculture's requirement that "retailers of a covered commodity . . . inform consumers, *at the final point of sale* . . . of the [commodity's] country of origin . . . . 7 U.S.C.A. §1638a (a)(1) (2007) (emphasis added); the Petroleum Marketing Act's requirement that fuel retailers display automotive fuel ratings "*at the point of sale* to ultimate purchasers." 15 U.S.C. § 2822(c) (2007) (emphasis added); the Federal Communications Commission's requirement that providers of commercial mobile service give notice "*at the point of sale* . . . ." of its election not to transmit emergency alerts, 47 U.S.C. § 1201(b)(1)(b)(2007) (emphasis added); and the Electronic Funds Transfer Act regulations' repeated reference to transfers occurring "at the point of sale." See, e.g., 12 C.F.R. §205.3(b)(1). Bose also relies on case law addressing "point of sale" cigarette advertising, Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 551 (2001), and the confusion caused to customers, for purposes of the Lanham Act, at the "point of sale." New Colt Holding Corp. v. RJG Holdings of Florida, Inc., 312 F. Supp. 2d 195, 225 (D. Conn. 2004).

Bose contends that FACTA is simply one of many statutes imposing conditions on a retailer's conduct at the point of sale. It also insists that this interpretation is consistent with the purpose of FACTA, which, it says, " is to protect a consumer's private information from being displayed in the busy, high traffic areas of public stores, where there is potential for credit card receipts to be viewed or misappropriated by third parties." (Doc. 12 at 9). "There is nothing in the legislative history or case law to suggest that Congress intended FACTA to extend to the wholly different circumstances where a purchase occurs over the telephone or where a receipt is mailed in a secure fashion to an address of Plaintiff's choosing, outside the view of others." Id. at 13. Bose

contends that it is entitled to summary judgment because the receipt printed by Bose was not supplied to her at the point of sale.[4]

The Plaintiff responds to Bose's argument by contending that the phrase "point of sale" must be read more broadly in light of the purpose underlying the Act. She states that FACTA was enacted "to prohibit the creation of customer receipts which reveal private credit information . . . the publication of which serves no legitimate business interest . . . ." (Doc. 31 at 5). According to Ehrheart, Congress's concern was that a credit card receipt not fall into the hands of an identity thief as a result of the cardholder's method of disposal. The plaintiff argues that given this purpose, the phrase "at the point of sale or transaction" was intended to mean "the provision of a receipt at the time of the transaction" and not a particular retail establishment or a specific point inside the store. Id. at 6. When a receipt is issued to document a transaction, the credit card information is "unnecessary and of no consequence to the consumer, thereby justifying its redaction for the sake of protecting the consumer." Id. Later, however, if a question arises, such as the validity of a transaction, the identity of the purchaser, or in the case of a return, full information may be necessary. In those circumstances, FACTA does not prohibit the printing of a receipt containing full card information [5]

The Plaintiff points out that although Congress has used the term "point of sale" to apply to a location, it has also used the phrase to identify a point in time. For example, Section 707(b)(5) of the National Oilheat Research Alliance Act of 2000, 42 U.S.C. §6201, (repealed), addressed

---

[4]Bose also argues that because its actions with respect to the Plaintiff did not fall within the parameters of FACTA, it cannot be penalized for violation of the Act. Because the court concludes that Bose's conduct is covered by FACTA, it need not address here the penalty provisions of the statute.

[5]The statute specifically excludes merchants' copies of receipts from the truncation requirement. See 15 U.S.C. Section 1681c(g)(1).

assessments on oil imported by the owner "*after* the point of sale".  <u>See</u>  §707(b)(5).   She also cites

case law in which the term "point of sale" was used to refer to a foreclosure sale in a bankruptcy

proceeding.  <u>In re Lenton Brunson McGill,</u> 78 B.R. 777, 779 (Bankr. D. S.C. 1986).  According to

Ehrheart, logic requires the court to find that the phrase "'point of sale or transaction' is . . . meant

to refer to the sale or transaction itself, thereby excluding all other instances where a cardholder

may, for legitimate reasons, request and be provided with a receipt bearing their [sic] credit/debit

card information." ( Doc. 31 at 9).

## 2. <u>Analysis</u>

Having carefully reviewed the parties' submissions on this issue against the background of

relevant law, the court is convinced that there is no definitive legal authority addressing the

meaning to be assigned to the phrase "point of sale or transaction" as that phrase is used in FACTA.

The words do not appear to have a fixed meaning, but have been defined instead by the context in

which they are used.  The term has been applied to denote a time or an event, as opposed to a

location.  <u>See e.g.</u>, <u>Utica Mut. Ins. Co. v. Bancinsure, Inc.</u>, No: 4 -06-cv664,  2007 WL 2860237 at

* 11   (E.D. Missouri, September 25, 2007) (evaluating fraud after the point of sale when customers

attempted to return purchases); <u>Caremark, Inc. v. Goetz</u>, 395 F. Supp.2d 683, 692 (D. Tenn. 2005)

(noting that insurer reimbursed at a lower rate for claim filed after the point of sale);  <u>Anderson v.</u>

<u>Equitable Life Assur. Soc'y. of U.S.</u>, 248 F. Supp. 2d 584, 592 (S.D. Miss. 2003) (assessing

whether there had been fraudulent concealment after the point of sale when plaintiffs were sent

annual policy summaries); <u>Ford Motor Co. v. Lloyd Design Corp.</u>, 184 F.Supp.2d 665, 676 ( E.D.

Mich. 2002) (protecting trademarks required that court tolerate at least some confusion as to source

or sponsorship after the point of sale).

The court finds that the surrounding facts and the general purposes underlying FACTA favor the Plaintiff's broader reading of the phrase "point of sale." The court agrees with the Plaintiff that:

> Defendant's proffered interpretation of the phrase "at the point of sale or transaction" makes no sense in the context of the statute. [It] would draw a distinction between receipts provided to the cardholder at the location of the credit/debit card machine and those receipts provided elsewhere. However, given the obvious purpose of FACTA, i.e., to prohibit the unnecessary inclusion of sensitive credit card information on customer receipts, the relevant factor is not *where* the receipt is provided to the cardholder, it is that the protected information is wholly unnecessary in the context of providing a customer receipt and its inclusion on such receipt, no matter *where* the customer receives it, can lead to identity theft.

(Doc. 13 at 6) (emphasis in original). Reading the term narrowly to refer to the interior of a store, or even more narrowly to mean a particular cash register or ATM machine raises the likelihood of absurd results that depend more on serendipity than on any rational reading of the law. Furthermore, each alleged FACTA violation would require an in-depth fact specific inquiry into the Plaintiff's location during every sale documented by a receipt.

For example, under the Defendant's situs of the sale scenario, the application of FACTA's truncation requirement depends totally on where the customer happened to be standing at the time she received the receipt. If she was standing at the register and was handed a non-truncated receipt, FACTA was violated. If, however, she left the store prematurely and a clerk ran outside to give her the forgotten receipt while she was standing on the sidewalk, FACTA is irrelevant; a non-truncated receipt is fine.

The Plaintiff posits another set of facts - and there are many that could be hypothesized - which, under the Defendant's reading of the law, would effect another anomalous result. Where a woman eats in a restaurant and takes the bill to the cash register herself, FACTA would require that

8

the restaurant provide a truncated receipt.  If, though, a server takes the payment to the register and carries the receipt back to the customer, FACTA offers the diner no protection.

The court is not persuaded by the Defendant's unsupported assertion that "the purpose of FACTA is to protect a consumer's private information from being displayed in the busy high traffic areas of public stores where there is a potential for credit card receipts to be viewed or misappropriated by third parties."  (Doc. 21 at 9).  Although this may be true in part, the court concludes that the purpose underlying FACTA should be read more broadly.  It is equally plausible that the limitation placed on the truncation requirements of FACTA was  imposed to limit redaction to receipts provided in a situation where the customer is given a receipt, but has no need at the time for the redacted information.  This prevents misappropriation of sensitive information if the receipt is dropped, lost, or disposed of in an ordinary trash receptacle.  This broader reading of FACTA is bolstered by the reasoning of the District Court's unpublished decision in Vasquez-Torres v. Stubhub, Inc., No. CV 07-1328, 2007 U.S. Dist. LEXIS 63719 (C.D. Cal. July 2, 2007).   Ruling on a Motion to Dismiss,  the Court concluded that a corporation selling tickets through a website satisfied FACTA's "printing" requirement when it transmitted an "electronic transmission to [ticket-buyers'] computers and or monitors."  Id. at * 6.  The Court implicitly accepted that physical proximity of the seller and buyer was not necessary to establish a violation of the statute.  The Court's comments with respect to the FACTA provision now under consideration go to a different issue, but are, nonetheless, relevant:

> Congress likely intended to prevent identity theft in all its forms, including common online identity theft, and did not intend to limit safeguards to a narrow subset of paper-printed receipts.  Plaintiffs' interpretation of print, including information transmitted to a computer screen, better comports to the purposes of FACTA than Defendant's narrow definition.

Id. at *8-9.  If the court were to adopt the Defendant's interpretation of FACTA, the statute would not reach the theft of information secured as the result of an online transaction, because buyers' computers are located outside of - maybe thousands of miles from - the retail premises.[6]  Where internet shopping is a significant component of the total retail market, the court is not persuaded that Congress intended this exclusion.

In sum, the court is not convinced by the Defendant's argument, and would not adopt its narrow reading of 15 U.S.C. § 1681c(g).

### III.  CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (Doc. 18)  filed by the Defendant, Bose Corporation, should be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.   Any party opposing the objection shall have seven (7) days from the date of service of objections to respond thereto.   Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge

---

[6]Although the court does not rest its recommendation on this ground, it does note that the record is devoid of information suggesting that Bose attempted to comply with FACTA by programming or setting aside a particular cash register to print receipts showing varying amounts of credit information depending on an employee's judgment as to where the sale took place.  It is more likely that all receipts from the register used by Smith revealed expiration dates (in violation of FACTA), and that Bose developed its interpretation of the law after the fact. This seems especially likely where Ehrheart's credit card *numbers* were - even according to the Defendant - "properly truncated in accordance with FACTA." (Doc. 21 at 3 n. 3).  It is interesting that the Defendant uses this phrase, given its argument that FACTA does not apply at all in the circumstances of this case. If it was acceptable to print the expiration date on the receipt, it would have been permissible to print the full credit card number as well.

Dated: 10 December, 2007

cc:     Hon. Gary L. Lancaster
        United States District Judge

        All counsel of record by Notice of Electronic Filing